**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 21, 2022**

# In the Court of Appeals of Georgia

A22A0955. RAYFIELD v. POPE, McGLAMRY, KILPATRICK, MORRISON & NORWOOD, P.C.

HODGES, Judge.

This case concerns a compensation dispute between an attorney and his former law firm. During his employment with Pope, McGlamry, Kilpatrick, Morrison & Norwood, P. C. ("Pope McGlamry"), attorney David Rayfield and the other shareholders of Pope McGlamry adopted a Shareholder Compensation Procedure agreement (the "Compensation Agreement") in 2012, which did not contain a forum selection clause. When Rayfield left Pope McGlamry in 2015, the parties executed an "Agreement for Separation of Employment" (the "Separation Agreement"), which did include a forum selection clause identifying Fulton County as the selected venue.

In 2021, Rayfield requested from Pope McGlamry documentation related to the Compensation Agreement and the law firm's financial situation for the 2015 fiscal year, and the firm responded with a civil action against Rayfield in the Superior Court of Fulton County seeking declaratory judgment, breach of contract, and unjust enrichment. Rayfield moved to dismiss Pope McGlamry's complaint or, in the alternative, to transfer the case to Muscogee County, his county of residence. The trial court concluded that Rayfield waived "any objections to . . . jurisdiction and venue in the Separation Agreement" and denied Rayfield's motion. We granted Rayfield's application for interlocutory appeal, and he now argues that the trial court erred because the parties' dispute arose solely from the Compensation Agreement, which did not have a forum selection clause, rather than the Separation Agreement. We agree, and we reverse the trial court's order and remand with direction that the trial court transfer this case to a Muscogee County court.

The record indicates that Rayfield joined Pope McGlamry as a partner in January 2006. The firm became a professional corporation in November 2011, and the shareholders of the firm adopted the Compensation Agreement in December 2012 "to define the firm's obligations in compensating its shareholders." The relevant portion of the Compensation Agreement provided that

[a]s of the end of each fiscal year, [Pope McGlamry] shall determine the amount of each Shareholder's Net Compensation Due for such fiscal year and shall remit to each Shareholder, such amount within thirty (30) days of the end of each such fiscal year.

Thereafter, the Compensation Agreement included the manner of calculating each shareholder's compensation. Finally, in a section entitled "Partial Year Treatment," the Compensation Agreement provided that

[i]n the event it is necessary to determine a Shareholder's Net Compensation Due for any period other than [Pope McGlamry's] full fiscal year, such as in the case of a Shareholder's death, disability or termination of employment prior to the end of [Pope McGlamry's] fiscal year, then such determination shall be based on the portion of the year the Shareholder performed services for [Pope McGlamry] and shall be made at the end of such fiscal year. Any additional amount owed by [Pope McGlamry] to the Shareholder . . . with respect to such period shall be paid within ninety (90) days after the end of [Pope McGlamry's] fiscal year, and any amount owed by the Shareholder . . . to [Pope McGlamry] with respect to such period shall be repaid within said ninety (90) day period. (The purpose of this provision is to avoid the necessity of making any calculations of Net Compensation Due at any time other than at the end of [Pope McGlamry's] fiscal year.)

The Compensation Agreement did not contain a forum selection clause.

Over the course of the next few years, the firm's focus gradually drifted from Rayfield's preferred practice areas, and Rayfield announced plans in April 2015 to leave the firm. Upon Rayfield's departure in July 2015, Rayfield and Pope McGlamry executed the Separation Agreement. In Section 1 of the Separation Agreement, Rayfield acknowledged that his

> last day of employment with [Pope McGlamry] was July 17, 2015 (the "Termination Date"), and . . . that, other than the amount specifically referenced in this Agreement and any amount [he] may be entitled to pursuant to Section 3 of the Compensation [Agreement] as a mid-year withdrawing shareholder, [he had] been paid all wages, salary, bonuses, expense reimbursements, and any other amounts that [he was] owed by [Pope McGlamry][.]

Following an extensive general release in Section 5 (a) of the Separation Agreement, Section 5 (b) noted that the release did not apply to "the payment to [Rayfield] of an amount, if any, [he] may be entitled to pursuant to Section 3 of the Compensation [Agreement] as a mid-year withdrawing shareholder[.]" Section 5 (b) also provided that "[t]he amounts, benefits and reimbursements contemplated by this Section 5 (b) shall be provided whether or not [Rayfield] execute[d] this Agreement." Furthermore, relevant to this appeal, Section 18 of the Separation Agreement provided that

[t]he parties agree that any appropriate state court located [in] Fulton County, Georgia or federal district court for the Northern District of Georgia, as applicable, shall have exclusive jurisdiction of any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy. The parties agree that such shall be a proper forum in which to adjudicate such case or controversy and the parties consent to waive any objection to the jurisdiction or venue of such court(s).

In March 2021, Rayfield sent a letter to Pope McGlamry's counsel "concerning payment for 2015 as a mid-year withdrawing shareholder" under Section 3 of the Compensation Agreement in which he requested a series of documents used to calculate the amount due under the Compensation Agreement.[1] Pope McGlamry responded to Rayfield's letter by filing the present action: (1) seeking a declaratory judgment that, under the Compensation Agreement, the firm "owes [Rayfield] no amount, and that [Rayfield] owes [the firm] $65,666"; (2) alleging breach of contract because Rayfield failed to pay monies due the firm; and (3) unjust enrichment. Rayfield answered, counterclaimed, and moved to dismiss the complaint or, in the alternative, to transfer the case from Fulton County to Muscogee County, arguing that

---

[1] Contrary to Pope McGlamry's allegations, the letter did not contain a demand for "more money from [the firm]. . . ."

the parties' dispute arose solely from the Compensation Agreement, which did not have a forum selection clause. The trial court denied Rayfield's motion, apparently concluding, without analysis, that the forum selection clause in the parties' Separation Agreement governed the parties' dispute arising from the Compensation Agreement. The trial court granted Rayfield a certificate of immediate review, and we granted Rayfield's application for interlocutory appeal. This appeal follows.

In a single enumeration of error, Rayfiled argues that the trial court erred in denying his motion to dismiss or, in the alternative, to transfer the case because the Separation Agreement's forum selection clause does not apply to the parties' dispute arising from the Compensation Agreement. We agree.

Our analysis necessarily begins with the language of the two contracts at issue. To that end, "[t]he cardinal rule of construction is to ascertain the contracting parties' intent, and where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." (Citation omitted.) *Wood v. Wade*, 363 Ga. App. 139, 146 (2) (a) (869 SE2d 111) (2022).[2] In this case,

---

[2] "We review a trial court's denial of a motion to transfer for abuse of discretion[,]" and "[i]f a case is alleged to have been brought in the wrong venue, the appropriate remedy is to transfer such case." (Citations omitted.) *Rader v. Levenson*, 290 Ga. App. 227, 230 (1) (c) (659 SE2d 655) (2008). Because it does not appear that the trial court evaluated Rayfield's motion to dismiss, we need not address that

6

the parties' initial contract was the Compensation Agreement, which provided for the amount and manner of payment due to a shareholder who left Pope McGlamry's employ "prior to the end of [Pope McGlamry's] fiscal year[.]" Notably, the Compensation Agreement does not contain a forum selection clause; therefore, any cause of action arising solely from that agreement would generally have to be filed in the defendant's county of residence. See Ga. Const. of 1983, Art. VI, Sec. II, Par.VI ("All other civil cases . . . shall be tried in the county where the defendant resides[.]").

However, upon Rayfield's departure from Pope McGlamry, the parties also executed the Separation Agreement, which does include a forum selection clause.[3] One of the purposes of the Separation Agreement was to provide Pope McGlamry with a general release of any claims Rayfield may have resulting from his departure. Excepted from the Separation Agreement's general release are any claims specifically

portion of Rayfield's motion. See, e.g., *Mellberg v. Impact Partnership*, 355 Ga. App. 691 (844 SE2d 223) (2020) ("On appeal, we conduct a de novo review of the denial of a motion to dismiss.") (citation and punctuation omitted).

[3] As in *Cemex Constr. Materials Fla. v. LRA Naples, LLC*, 334 Ga. App. 415, 416 (1) (779 SE2d 444) (2015), the question in this case is not "whether the [Separation Agreement's] forum selection clause was unreasonable, but instead whether it applies to the particular complaint before us." Id.

related to the Compensation Agreement, meaning that any claim Rayfield may have against Pope McGlamry under the Compensation Agreement would be independent of any Separation Agreement-related claims.

Moreover, the forum selection clause in the Separation Agreement provides that "any appropriate state court located [in] Fulton County, Georgia or federal district court for the Northern District of Georgia" would have exclusive jurisdiction "of any case or controversy arising under or in connection with *this Agreement*. . . ."[4] (Emphasis supplied.) Even Pope McGlamry's own pleadings acknowledge that the

_____

[4] In *Cemex*, we evaluated a similar forum selection clause in which the parties' contract provided that "[v]enue for any action concerning *this Agreement* shall be in Lee County, Florida." 344 Ga. App. at 415. Critically, in concluding that the parties' case concerned the parties' "Four-Party Agreement" rather than the parties' three prior contracts, we noted that resolution of the case turned "on whether the action concerned the Four-Party Agreement, which it clearly does, and not whether the Four-Party Agreement was intended to be integrated with [three] pre-existing contracts." Id. at 416 (1). And while there is nothing that "mandates that contracts must be contemporaneous and construed as one contract in order for a forum selection clause in one contract to apply to an action concerning multiple, interrelated contracts[,]" the relevant inquiry remains whether the dispute arises from the specific contract at issue. See id. (noting that the Four-Party Agreement modified the three prior agreements) (citing *SR Bus. Svcs. v. Bryant*, 267 Ga. App. 591, 593 (600 SE2d 610) (2004) (holding that a forum selection clause in a merger agreement applied to an employment agreement attached as an exhibit to the merger agreement because, in part, "[b]oth agreements were signed on the same day," related to the same subject matter, and "that, when construed together, they constitute, as a whole, but one contract") (citation and punctuation omitted)).

parties' dispute centers upon Rayfield's inquiry under the Compensation Agreement. For example, Pope McGlamry's complaint: (1) alleged that Rayfield "demanded more money . . . based on an erroneous reading of [the] Compensation [Agreement];" (2) contained multiple paragraphs describing the execution and operation of the Compensation Agreement; (3) asserted, in support of its claim for declaratory judgment, that "[t]here exists a justiciable controversy between [the parties] as to the [i]nterpretation of the Compensation [Agreement]" and that Pope McGlamry sought a declaration of the payments allegedly due under the Compensation Agreement; and (4) cited solely the Compensation Agreement in support of its claim for unjust enrichment. Indeed, even if Pope McGlamry is ultimately successful in obtaining repayment from Rayfield, it will be because of the terms of the Compensation Agreement rather than the Separation Agreement.[5] It follows that, based upon the plain language of the parties' agreements, any litigation concerning the Compensation Agreement must be brought in the defendant's county of residence due to the absence of a forum selection clause, while causes of action related to the Separation Agreement must be filed in an appropriate court in Fulton County or the United States

_____

[5] Moreover, each of these factors further belies Pope McGlamry's argument that the Separation Agreement controls "all matters pertaining to the termination of the employment relationship."

9

District Court for the Northern District of Georgia. Because the record demonstrates that the parties' dispute arises solely from the Compensation Agreement, venue is proper in Rayfield's county of residence, and the trial court erroneously denied Rayfiled's motion to transfer.[6] See, e.g., *Cemex Constr. Materials Fla. v. LRA Naples, LLC*, 334 Ga. App. 415, 416 (1) (779 SE2d 444) (2015).

In *Cemex*, the relevant contract was known as the "Four-Party Agreement," which was executed after three pre-existing agreements between the parties. 344 Ga. App. at 416. Although none of the three prior agreements had a forum selection clause, the Four-Party Agreement did. When LRA Naples moved to dismiss Cemex's complaint based upon the forum selection clause in the Four-Party Agreement, the trial court concluded that the Four-Party Agreement "should be read as a separate, independent agreement from the prior three agreements, to which the forum selection clause does not apply[,]" and denied the motion. Id. at 416 (1). We reversed, noting that the broad language of the clause applied to "'any action concerning' the Four-Party Agreement" and that the complaint "concerned the Four-Party Agreement . . .

---

[6] Pope McGlamry's conclusion that the parties' dispute arose from the Separation Agreement is based on the false premise that the Separation Agreement waived *any* challenge to venue. As we have noted, the agreements do not so provide, and there is no contractual language to indicate that the contracts were intended to operate in such a manner.

10

and not whether the Four-Party Agreement was intended to be integrated with the pre-existing contracts." Id.

Here, just as the complaint in *Cemex* made clear that "the action concerned the Four-Party Agreement," Pope McGlamry's complaint confirmed that its causes of action arose from the Compensation Agreement, not the Separation Agreement. Therefore, the forum selection clause in the Separate Agreement does not apply to claims arising solely from the Compensation Agreement, and the trial court erred in enforcing the clause and denying Rayfield's motion to transfer the case. See, e.g., *Cemex*, 334 Ga. App. at 416 (1).

*Judgment reversed and case remanded with direction. Barnes, P. J., and Brown, J., concur*.